Jamise (Miller) STEPHENSON, Administratrix of the Estate of David Miller, Appellant–Plaintiff,

v.

Gary LEDBETTER, Appellee–Defendant.

No. 49A04–9007–CV–343.

Court of Appeals of Indiana,
Fourth District.

Aug. 5, 1991.

George Clyde Gray, Steven R. Fox, Gray Robinson Eckert & Ryan, Indianapolis, for appellant.

Edward R. Hannon, Douglas A. Tresslar, Harrison & Moberly, Indianapolis, for appellee.

MILLER, Judge.

David Miller was killed after a night at the Marion County Fair Grounds where he spent the evening drinking and watching the demolition derby with some friends. On the way home, Miller was hanging over the side rail of companion Gary Ledbetter's pick-up truck when he fell from the truck and was killed. Miller's wife, Jamise Stephenson, sued Ledbetter; however, the court granted summary judgment in favor of Ledbetter, finding that Ledbetter, as the driver of the truck, had no duty to act to avoid the harmful, reckless antics of Miller, nor was there a genuine issue of material fact with regard to Ledbetter's negligence. Stephenson appeals, claiming that summary judgment should not have been granted.

We reverse, finding that Ledbetter, as the driver of the truck, had a duty to use reasonable care for Miller's safety, and the question of whether he exercised such care under the circumstances, is a question of fact.

## DISCUSSION AND DECISION

■ Here, Ledbetter was the moving party. Thus, he had a duty through the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits and testimony, if any, to show that there was no genuine issue of material fact and that he was entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Willsey v. Peoples Federal Savings & Loan* (1988), Ind.App., 529 N.E.2d 1199. We are aware that summary judgment is rarely appropriate in negligence actions; *Hale v. Community Hospital of Indianapolis, Inc.* (1991), Ind.App., 567 N.E.2d 842, however, if Ledbetter established a lack of genuine issues of material fact, the burden was on Stephenson to present specific facts demonstrating a genuine issue for trial. *Id.; Elkhart Community School Corp. v. Mills* (1989), Ind.App., 546 N.E.2d 854. A genuine issue exists if the trial court would be required to resolve disputed facts decisive to the action or to a relevant secondary issue. *Taylor–Chalmers, Inc. v. Board of Commissioners* (1985), Ind.App., 474 N.E.2d 531. On appeal, we will affirm the grant of summary judgment if sustainable on any theory or basis in the record. *Willsey, supra.*

■ Here, the facts establish that Ledbetter was driving while Miller was hanging over the side of Ledbetter's truck, that Ledbetter was not speeding, that he was not intoxicated (he did have a trace of alcohol in his blood), and that he was not otherwise operating his truck in a reckless manner. Stephenson did not present evidence to contest these facts.[1] She argues

---

1. On appeal, Stephenson argues that several material facts are disputed: 1) how fast Ledbetter was driving; 2) how much Miller and Ledbetter had to drink that evening; and 3) the actions of the other passengers in the truck after the accident. The record reveals that the fastest Ledbet-

that assuming Ledbetter was driving safely, he had a duty to take some affirmative action for Miller's safety and that the question of Ledbetter's negligence should be resolved by the trier of fact.

The sole issue—which the trial court resolved in favor of Ledbetter—is whether Ledbetter owed any duty to take some action on Miller's behalf, other than to drive his truck in a safe manner. Stephenson argues that the duty owed to Miller was a duty to use reasonable care for the safety of his passengers in the operation of his truck, citing *Munson v. Rupker* (1925), 96 Ind.App. 15, 148 N.E. 169. She argues that reasonable persons could differ as to whether or not Ledbetter exercised that care; therefore, summary judgment is inappropriate. She suggests that a trier of fact might determine that Ledbetter had a duty to slow the truck, to tell Miller to get off or to stop the truck altogether. Ledbetter argues that there was no special relationship between himself and Miller; therefore, he had no duty to come to Miller's rescue. Further, he argues there is no evidence that he operated his truck recklessly or negligently.

In *Munson,* this court followed the common law rule[2] that a driver of a motor vehicle owes a duty to exercise reasonable care in its operation to avoid injury to passengers and held:

> He who enters an automobile to take a ride with the owner, ... takes the automobile and the driver as he finds them. But when the owner of the automobile starts it in motion, he, as it were, takes the life of his guest into his keeping, and in the operation of such car, he must use reasonable care not to injure any one riding therein with his knowledge and consent.... The law exacts of one who puts a force·in motion that he shall control it with skill and care in proportion to the danger created.

*Id.* at 29–30, 148 N.E. at 173–74. The *Munson* decision led to the passage of a motor vehicle guest statute, Ind.Code § 9–3–3–1. *Clipp v. Weaver* (1983), Ind., 451 N.E.2d 1092.[3] The statute, as originally

---

ter could have been driving when Miller fell was 45 miles per hour. However, there is no evidence that this was above the speed limit or reckless under the circumstances.

We fail to see how the question of how much Miller had to drink that evening is relevant to Ledbetter's negligence. Although the number of beers Ledbetter had that night is disputed, it is undisputed that a breathalyzer taken shortly after the accident revealed Ledbetter had a BAC of .01%.

Finally, it is undisputed that after the accident and before the police arrived, Miller's other companions removed a cooler full of beer and empty beer cans from the back of Ledbetter's truck and that one of the men left the scene of the accident before the police arrived. While it could probably be inferred from these actions that the men felt as if they had something to hide, these actions would have no bearing on Ledbetter's negligence.

Stephenson also argues on appeal that the affidavits of Ledbetter and other men in the truck—Tom Harsh, Randall Rivera, and Avery Kysar—which Ledbetter submitted with his motion for summary judgment—contained nothing more than conclusory allegations and are contradicted by the sworn deposition testimony. Therefore, she argues, the affidavits do not entitle Ledbetter to summary judgment. However, Stephenson did not object to the affidavits.

In *Paramo v. Edwards* (1990), Ind., 563 N.E.2d 595, Edwards raised—for the first time on transfer—that the substance of one of Para-

mos' affidavits consisted of conclusory allegations which would have been inadmissible at trial. Therefore, argued Edwards, the trial court improperly considered the affidavits in deciding whether summary judgment was appropriate. Our supreme court held:

> "... while the trial court['s] consideration of conclusory statements or matters in affidavits otherwise inadequate under T.R. 56(E) would constitute error, the defendant's failure to raise a timely objection constitutes waiver of such claim of error. In the present case, the failure of the defendants to raise such an objection precludes consideration of their contention that the Cohen affidavit contained inadmissible conclusory statements."

*Id.* at 600. Because Stephenson did not object to the affidavits below, we will not consider her contention that the affidavits were impermissible.

2. *See* 7A Am.Jur.2d *Automobiles and Highway Traffic* § 535 (1980), and cases cited therein.

3. In *Clipp v. Weaver* (1983), Ind., 451 N.É.2d 1092, our supreme court was faced with the question of whether Indiana's *automobile* guest statute applied to the operation of motor boats. The court held that the automobile guest statute was limited to the operation of motor vehicles, and that a boat could not be considered a motor vehicle. Thus, the guest statute did not apply and the operator of the boat had a duty to use reasonable care for the safety of his passengers.

enacted, modified the common rule that the operator of a motor vehicle has a duty to use reasonable care for the safety of his passengers by barring gratuitous passengers from recovering for damages caused by a driver's negligence.[4] *See Cook v. Mercury Lumber Co.* (1977), 171 Ind.App. 668, 359 N.E.2d 600. In 1984, the legislature amended the guest statute to bar only immediate family members and hitchhikers from recovering for such damages.[5]

Here, the guest statute is inapplicable because Miller does not fall within one of the categories enumerated in the statute. We therefore hold that the common law rule announced in *Munson*—that the driver of a motor vehicle has a duty to use reasonable care for the safety of his passengers—applies to this case.

■ Ledbetter argues that, absent a special relationship between himself and Miller, there was no duty to take affirmative action to prevent Miller from harming himself. He argues that there is no "special relationship" between a driver and his passengers which would impose a duty to take affirmative action, citing *Senese v. Peoples* (M.D.Pa.1985), 626 F.Supp. 465, where Senese was injured when he suddenly attempted to exit the cab of Peoples' moving pickup truck. The trial court granted summary judgment in favor of Peoples, holding there was no duty on the part of a driver to attempt to prevent a passenger from injuring himself when the passenger has placed himself in a position of peril. In reaching its decision, the court recognized that there were no Pennsylvania cases regarding "the

duty of care owed by the defendant in a case such as this". *Id.* at 467. However, the court relied on Restatement (Second) of Torts §§ 314, 314A in concluding that there was no special relationship between Peoples and his passenger. Absent the special relationship, there was no duty to act to rescue Senese.

We are not bound by the decision reached in *Senese*. Nor are we persuaded by the court's reasoning in that case. The *Senese* court was obviously deciding a novel question under Pennsylvania law—under which the duty of care owed by a defendant to passenger was not entirely clear. However, in Indiana, there is a duty imposed on the driver of a vehicle to use reasonable care for the safety of his passengers. *Munson, supra.* Further, there is no indication in *Senese* that the driver knew the passenger was trying to climb out the window. Here, it is undisputed that Ledbetter knew Miller was riding on the side of the truck.

A situation similar to the one presented here was addressed in *Johnson v. Pedicord* (1937), 105 Ind.App. 71, 10 N.E.2d 295. Pedicord was riding on the fender of Johnson's farmtruck. Johnson told Pedicord to get off the fender; however, the evidence was disputed as to whether Pedicord heard Johnson's request. On appeal, Johnson argued that Pedicord assumed the risk and that he was entitled to a jury instruction in this regard. In holding that the trial court did not err in refusing to give such an instruction, this court stated:

**4.** The statute provided in full:
The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, while being transported without payment therefor, in or upon such motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wanton or willful misconduct of such operator, owner, or person responsible for the operation of such motor vehicle.
Ind.Code. § 9–3–3–1.

**5.** The statute, as amended, provides in part as follows:
(b) The owner, operator, or person responsible for the operation of a motor vehicle is

not liable for loss or damage arising from injuries to or the death of:
(1) his parent;
(2) his spouse;
(3) his child or stepchild;
(4) his brother;
(5) his sister; or
(6) a hitchhiker;
resulting from the operation of the motor vehicle while the parent, spouse, child or stepchild, brother, sister, or hitchhiker was being transported without payment therefor in or upon the motor vehicle, unless the injuries or death are caused by the wanton or willful misconduct of the operator, owner, or person responsible for the operation of the motor vehicle.

"Our interpretation of this is that the appellant contends that the conduct of the appellee might have been such that there could have been no liability on the part of the appellant under the circumstances as disclosed by the evidence here.... While it might be said that the conduct of the appellee was such that it contributed to her injury, yet it cannot be said, under the issue tendered that such conduct would relieve the appellant of a reckless disregard of her rights."

*Id.* at 73, 10 N.E.2d at 296. Although *Johnson,* unlike the case before us, was appealed after a jury decision, the situations in the two cases are analogous. In *Johnson,* there was no evidence that Johnson breached his duty of care other than the fact he continued to drive when he knew Pedicord was sitting on the fender and this court held a jury could properly find that Johnson was negligent and that Pedicord's actions did not relieve him of that negligence. Here, the question is whether Ledbetter breached his duty to exercise reasonable care for Miller's safety by continuing to drive when he knew Miller was sitting on the side of his truck. What is reasonable under these circumstances is a question of fact. For instance, reasonable persons might differ on whether Ledbetter should have slowed his truck or even stopped the truck completely once he knew Miller was hanging over the side. We therefore find that summary judgment was inappropriate and remand this case for further proceedings.

CHEZEM and BUCHANAN, JJ., concur.