**Roger CULVER, Plaintiff–Appellant,**

v.

**James McROBERTS, Defendant–Appellee.**

No. 99–1202.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 9, 1999.

Decided Oct. 4, 1999.

Thomas A. Clements (argued), Ruman, Clements, Tobin & Holub, Hammond, IN, for Plaintiff–Appellant.

Bruce P. Clark, Michael M. Oberman (argued), Clark & Associates, Munster, IN, for Defendant–Appellee.

Before COFFEY, KANNE and EVANS, Circuit Judges.

KANNE, Circuit Judge.

Roger Culver appeals from the district court's grant of summary judgment dismissing his causes of action against James McRoberts. Culver suffered injuries and damages as a result of a multi-car accident caused by John Crowley, who was driving while intoxicated and was later convicted of reckless homicide. Crowley became intoxicated at a social gathering held on McRoberts's boat, and Culver brought suit against McRoberts in the Northern District of Indiana for negligence *per se* under the Indiana Dram Shop Act and common-law negligence for failure to supervise Crowley.

The district court granted summary judgment for McRoberts on both counts finding that: (1) McRoberts did not have "actual knowledge" of Crowley's intoxication as required for negligence *per se* under the Indiana Dram Shop Act; (2) McRoberts did not "furnish" alcohol to Crowley as required for negligence *per se* under the Dram Shop Act; and (3) an independent common-law action for negligent supervision of an intoxicated social guest failed to state a claim under Indiana law.

For the reasons presented in the following discussion, we affirm the district court's grant of summary judgment on both claims for relief.

## I. HISTORY

During the summer of 1993, Defendant James McRoberts raced his father's sailboat, the "Saludos," in weekly regattas on Lake Michigan from the Hammond Marina Yacht Club in Hammond, Indiana. John Crowley served as one of McRoberts's first mates aboard the Saludos and reported to the Yacht Club for their regularly scheduled race on September 1, 1993.

The race began that night between 6 p.m. and 6:45 p.m. with McRoberts, Crowley and the rest of the Saludos crew racing against approximately fifteen other boats. The race ended between 9 p.m. and 9:30 p.m. Immediately thereafter the crew of the Saludos buttoned down, cleaned the boat and put the sails below deck, finishing at approximately 10:15 p.m. After these post-race chores, McRoberts began calculating the race results for the night, and race participants from competing boats gathered at McRoberts's boat to socialize, report finish times and hear final race results.

The Saludos was a forty-foot yawl equipped with a kitchen space and galley where people regularly left liquor, beer and other beverages for these weekly post-race gatherings. As was custom, people mixed their own drinks, and approximately ten to twelve people socialized on and around the Saludos until the gathering wound down around midnight.

Between 10 p.m. and 11 p.m., Crowley had two or three drinks, which he prepared for himself. At some time during

this period, McRoberts, Crowley and a number of others were engaged in a conversation about boating safety. This discussion ended by 11 p.m. Plaintiff's expert witness on toxicology submitted an affidavit stating that, based on Crowley's physical characteristics and blood-alcohol reading taken later that night, Crowley may have been visibly drunk as early as 11:05 p.m., after the boating safety discussion had ended, but would certainly have been visibly drunk by 11:30 p.m. However, several witnesses on board the Saludos at that time testified that Crowley did not stagger or slur his speech and was not visibly intoxicated that night.

Crowley believed that he may have consumed one more drink between 11 p.m. and midnight. Plaintiff does not allege that McRoberts actually observed Crowley or interacted with Crowley between 11 p.m. and midnight. Pursuant to his duties as race commodore, McRoberts was busy recording finish times, calculating the race results, conversing with visitors and reporting results to race participants. McRoberts testified that he did not observe Crowley between 11 p.m. and midnight and never was aware of what or how much Crowley was drinking.

Around midnight, McRoberts, Crowley and McRoberts's wife left the Hammond Marina Yacht Club and drove around north Hammond in search of a late-night meal. At that time, McRoberts recognized that Crowley was "buzzed", because he was more talkative, but knew that Crowley was not drunk based on his previous experiences socializing with Crowley. The threesome searched for a restaurant still open at that hour for about forty-five minutes and arrived at the Purple Steer Restaurant around 1 a.m. where they had an hour-long meal. Neither Crowley, nor anyone else, drank at the Purple Steer Restaurant. They returned to the Marina at approximately 2 a.m.

From there, Crowley drove away for home in his own car but was involved in a three-vehicle accident at 2:15 a.m. Crowley struck a semitractor trailer, which then catapulted the concrete center barrier and struck a second semi-tractor trailer driven by Plaintiff Roger Culver. Culver suffered serious injuries and his passenger was killed.

Lake County Police Officer Julie Hager arrived at the accident scene at 2:30 a.m. and reported that Crowley was "very unsteady on his feet," "very thick tongued" and was unable to remember the accident. Crowley pled guilty to a criminal charge of reckless homicide and stipulated that he had a blood-alcohol level of approximately .20 at the time of the accident.

On August 24, 1995, Plaintiff brought this diversity suit against McRoberts for negligence *per se* under the Indiana Dram Shop Act and for common-law negligence. Plaintiff sought damages suffered as a result of the accident claiming that McRoberts was negligent *per se* because he provided alcoholic beverages to Crowley in violation of the Indiana Dram Shop Act, and that McRoberts also was liable under a common-law theory of negligent supervision under Indiana law. On January 12, 1999, the district court entered summary judgment against Plaintiff finding that: (1) McRoberts did not have "actual knowledge" of Crowley's intoxication as required for negligence *per se* under the Indiana Dram Shop Act; (2) McRoberts did not "furnish" alcohol to Crowley as required for negligence *per se* under the Dram Shop Act; and (3) a common-law dram shop action independent of the statutory action was not cognizable under Indiana law. Plaintiff now appeals the district court's grant of McRoberts's motion for summary judgment.

## II. ANALYSIS

### A. *Standard of Review*

We review the district court's grant of summary judgment *de novo*, drawing our own conclusions of law and fact from the record before us. *Haefling v. United Parcel Serv.*, 169 F.3d 494, 497 (7th Cir.1999).

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, we must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, neither "the mere existence of *some* alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. 2505, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), is sufficient to defeat a motion for summary judgment. A genuine issue of fact "exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole." *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir.1999) (Citation omitted).

### B. *Negligence Per Se Under the Indiana Dram Shop Act*

■ Under Indiana law, a person who provides an alcoholic beverage to someone who that person knows is intoxicated may be liable for tort damages caused later by that intoxicated person. The Indiana Dram Shop Act provides that: "[i]t is unlawful for a person to sell, barter, deliver, or give away an alcoholic beverage to another person who is in a state of intoxication if the person knows that the other person is intoxicated." IND.CODE § 7.1–5–10–15(a) (1998).

Indiana law imposes civil liability on persons who violate the Dram Shop Act for damages arising from the intoxicated person's subsequent tortious conduct where: "(1) the person furnishing the alcoholic beverage had actual knowledge that the person to whom the alcoholic beverage was furnished was visibly intoxicated at the time the alcoholic beverage was furnished; and (2) the intoxication of the person to whom the alcoholic beverage was furnished was a proximate cause of the death, injury, or damage alleged in the complaint." IND. CODE § 7.1–5–10–15.5(b) (1998); *see Whisman v. Fawcett*, 470 N.E.2d 73, 80 (Ind. 1984) ("Indiana law clearly endorses the proposition that a violation of the liquor laws will result in a civil action."); *Muex v. Hindel Bowling Lanes, Inc.*, 596 N.E.2d 263, 266 (Ind.Ct.App.1992); *Ashlock v. Norris*, 475 N.E.2d 1167, 1169 (Ind.Ct. App.1985).

Plaintiff argued before the district court that McRoberts violated the Dram Shop Act because McRoberts "furnished" alcoholic beverages to Crowley by virtue of the availability of alcohol on McRoberts's boat, and McRoberts had "actual knowledge" that Crowley was intoxicated when those drinks were furnished. The district court granted summary judgment for McRoberts on both elements finding that McRoberts did not "furnish" beverages to Crowley under the meaning of the Dram Shop Act and that McRoberts, in any case, did not have actual knowledge that Crowley was intoxicated. Even assuming *arguendo* that McRoberts "furnished" beverages to Crowley, we agree with the district court that McRoberts did not have actual knowledge of Crowley's intoxication, and therefore Plaintiff's claim for negligence *per se* must fail.

■ In order to establish actual knowledge by McRoberts, Plaintiff must prove McRoberts's knowledge under a subjective standard, not an objective one. *See Gariup Construction Co. v. Foster*, 519 N.E.2d 1224, 1230 (Ind.1988). The determination of actual knowledge permits resort to reasonable inferences based upon a careful examination of the surrounding circumstances. *See Jackson v. Gore*, 634

N.E.2d 503, 506 (Ind.Ct.App.1994). However, "proof of the statutory violation cannot be shown merely by evidence that the provider, in the exercise of reasonable care, should have known of the recipient's intoxication. The statutory requirement that the provider 'knows that the other person is intoxicated,' cannot be satisfied by evidence of such constructive knowledge." *Gariup*, 519 N.E.2d at 1230.

Plaintiff must show that McRoberts had actual knowledge that Crowley was intoxicated at the time Crowley procured his drinks. Crowley testified that he had two to three drinks between 10 p.m. and 11 p.m. and perhaps one more drink between 11 p.m. and midnight. Plaintiff's expert witness testimony, which constitutes the only evidence proffered by Plaintiff on the issue of actual knowledge, attests that Crowley may have been visibly intoxicated by 11:05 p.m. Even drawing all reasonable inferences in favor of Plaintiff, Crowley was visibly intoxicated no earlier than 11:05 p.m. after which Crowley had only one additional drink at most. Thus, to defeat Defendant's motion for summary judgment, Plaintiff must provide a reasonable basis for finding that McRoberts had actual knowledge that Crowley was intoxicated when Crowley procured this final drink sometime between 11:05 p.m. and midnight.

Plaintiff, however, offers no direct evidence showing that McRoberts observed Crowley between 11:05 p.m. and midnight. In fact, McRoberts testified that he did not have the opportunity to observe Crowley at that time. For part of this period, McRoberts was occupied by his duties as scorekeeper for the race and was calculating final racing results inside the cabin of the Saludos. Crowley prepared his own drinks, and both Crowley and McRoberts, independent of each other, mingled socially among the many visitors who had gathered at the Saludos. McRoberts observed Crowley only later as they departed the marina for their late meal, after midnight, when Crowley was no longer drinking.

Plaintiff offers no testimony or evidence indicating that McRoberts actually interacted with or observed Crowley between 11:05 p.m. and midnight.

Although circumstantial evidence may suffice to generate a genuine issue of material fact, Plaintiff only insists that McRoberts and Crowley were both in and around the Saludos and McRoberts must have observed Crowley at some point during that time. Plaintiff argues that "a reasonable inference would be that [McRoberts] could not avoid observing Crowley's consumption of beverages and his trips to the galley portion of the same cabin to mix and replenish his drinks." Appellant's Brief at 29. Plaintiff futilely argues for a standard of constructive notice where the statute expressly requires actual knowledge for liability.

■ Plaintiff must prove that the defendant was in position to observe the intoxicated recipient when alcohol was furnished and that the recipient was visibly intoxicated at the time. *See Delta Tau Delta, Beta Alpha Chapter v. Johnson*, 712 N.E.2d 968, 974–75 (Ind.1999); *Muex*, 596 N.E.2d at 266. Even drawing all reasonable inferences in his favor, Plaintiff has failed to provide a reasonable basis for finding that this might have occurred here.

■ Although Plaintiff cites for support *Jackson*, 634 N.E.2d at 506, his reliance is misplaced. In that case, the waitress who furnished alcohol to the intoxicated patron personally served the patron with many drinks and had ample opportunity to observe the patron while doing so. The Indiana Court of Appeals reversed the grant of summary judgment for the defendant because there was no question whether the waitress had an opportunity to observe the intoxicated patron. In contrast, McRoberts did not serve Crowley personally with any drinks and Plaintiff has not offered evidence indicating that McRoberts had any analogous opportunity to observe Crowley after 11:05 p.m.

Plaintiff contends that there is reasonable basis for finding actual knowledge because his expert testimony posits that Crowley may have been visibly intoxicated at 11:05 p.m. that night, and must have been visibly intoxicated at 11:30 p.m. Despite witness testimony that Crowley was not visibly intoxicated that night, Plaintiff cites *Booker, Inc. v. Morrill*, 639 N.E.2d 358, 362 (Ind.Ct.App.1994), for the proposition that his expert testimony is sufficient to establish actual knowledge in the face of contrary witness testimony.

In *Booker*, bartenders served an intoxicated patron who subsequently caused a major car accident. The bartenders and another witness testified that the patron was not visibly inebriated, but the plaintiff presented expert testimony attesting that any person with the patron's blood-alcohol content would have manifested physical signs of intoxication. The Indiana Court of Appeals found that the expert testimony constituted sufficient evidence to support the trial court's determination that the bartenders had actual knowledge of the patron's intoxication when they served him. *Id.* at 362–63.

However, the bartenders in *Booker* admitted that they had full opportunity to observe the patron. Indeed, they testified that they observed him as they were serving him. Here, unlike *Booker* and *Jackson*, there is no evidence that McRoberts observed Crowley when Crowley obtained his final drink between 11 p.m. and midnight on September 1, 1993, regardless whether Crowley was visibly intoxicated. Plaintiff's reliance on *Booker* presupposes that McRoberts actually observed Crowley at the time when Crowley procured his final drink and was visibly intoxicated according to Plaintiff's expert witness. There is no support in the record for Plaintiff's presupposition.

Plaintiff also cites testimony from Officer Hager and Crowley's blood-alcohol content after the accident to show that Crowley was visibly intoxicated. This, however, is irrelevant. Plaintiff is correct that, in dram-shop actions, the alcohol recipient's condition shortly after leaving the provider can assist the fact finder in determining whether the recipient was visibly intoxicated when alcohol was furnished. *See Muex*, 596 N.E.2d at 266; *Ashlock*, 475 N.E.2d at 1170. However, under the standard of review for summary judgment, we have already drawn the inference in favor of Plaintiff that Crowley was visibly intoxicated between 11:05 p.m. and midnight. The problem for Plaintiff is that he has failed to provide a reasonable basis for finding that McRoberts observed Crowley between 11:05 p.m. and midnight.

Plaintiff failed to demonstrate a genuine issue of material fact regarding McRoberts's opportunity to observe and the district court was correct in finding that Plaintiff has not provided a reasonable basis for finding actual knowledge. Since this failure is dispositive of Plaintiff's negligence *per se* claim, we need not address the issue whether McRoberts "furnished" alcoholic beverages to Crowley under the meaning of the Indiana Dram Shop Act. The district court's grant of summary judgment for Defendant on the negligence *per se* claim will be affirmed.

### C. *Common–Law Negligence Claim*

■ Plaintiff argues that McRoberts is liable as a social host under a common-law negligence theory for failure to supervise Crowley. There is no genuine issue of material fact because McRoberts does not dispute that he was social host to Crowley. Under Indiana law, however, a social host does not bear liability for negligent supervision of his guests except where defined by statute. In *Gariup*, 519 N.E.2d at 1228, the Indiana Supreme Court declared unequivocally that "this Court is unwilling to depart from the general rule followed in most jurisdictions, and we hold that common law liquor liability shall not be extended to the purely social host, except in cases involving a breach of a statutory duty." Although the statement in *Gariup* arguably came in dicta, it stated the unam-

biguous intention of the Indiana Supreme Court to limit negligence liability for the purely social host, stemming from the provision of alcohol, to negligence *per se* under Indiana statutes. Plaintiff offers only vague and uncompelling rationales for this Court to contravene that clear intent by permitting Plaintiff to proceed under this theory of negligence. We decline to do so. Defendant is entitled to judgment as a matter of law and the district court properly granted his motion for summary judgment because Plaintiff has failed to state a claim for which relief can be granted. We will affirm.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court granting Defendant's motion for summary judgment on both the negligence *per se* and the common-law negligent supervision claims.